XAVIER BECERRA
Attorney General of California
SUSAN S. FIERING
Supervising Deputy Attorney General
GEORGE TORGUN, State Bar No. 222085
MARY S. THARIN, State Bar No. 293335
Deputy Attorneys General
 1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone: (510) 879-1002
Fax: (510) 622-2270
E-mail:  George.Torgun@doj.ca.gov

*Attorneys for the State of California*

HECTOR BALDERAS
Attorney General of New Mexico
BILL GRANTHAM (*pro hac vice pending*)
Assistant Attorney General
 201 Third St. NW, Suite 300
 Albuquerque, NM 87102
 Telephone: (505) 717-3520
 E-Mail: wgrantham@nmag.gov

*Attorneys for the State of New Mexico*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, by and through XAVIER BECERRA, ATTORNEY GENERAL; and STATE OF NEW MEXICO, by and through HECTOR BALDERAS, ATTORNEY GENERAL,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT; KATHARINE S. MACGREGOR,** Acting Assistant Secretary for Land and Minerals Management, United States Department of the Interior; and **RYAN ZINKE,** Secretary of the Interior,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act,<br>5 U.S.C. § 551 *et seq*.) |

**INTRODUCTION**

1.  In this action, the States of California and New Mexico ("Plaintiffs") challenge an action by the U.S. Bureau of Land Management, *et al*. ("Bureau" or "Defendants") to "postpone" certain compliance dates of the Waste Prevention, Production Subject to Royalties and Resource Conservation rule ("Waste Prevention Rule" or "Rule"), which was promulgated by the Bureau on November 18, 2016.  81 Fed. Reg. 83,008 (Nov. 18, 2006).  The Waste Prevention Rule provides a much-needed update of 38-year-old regulations governing the release of natural gas

1

from new and existing oil and gas operations on federal and Indian lands, and clarifies when gas lost through venting, flaring, or leaks is subject to royalties. The Bureau estimated that the Rule would have substantial annual benefits, including producing up to 41 billion cubic feet of additional natural gas, eliminating 175,000-180,000 tons of methane emissions, cutting emissions of hazardous air pollutants by 250,000-267,000 tons, and generating up to $14 million in additional royalties. The Rule became effective on January 17, 2017.

2. On June 15, 2017, almost five months after the effective date of the Rule, the Bureau published a notice in the Federal Register purporting "to postpone the compliance dates for certain sections of the Rule" pursuant to Section 705 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 705. 82 Fed. Reg. 27,430 (June 15, 2017) ("Postponement Notice"). Section 705 provides, in relevant part, that "[w]hen an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review."

3. The Postponement Notice is illegal for several reasons. First, by its plain language, Section 705 of the APA does not provide Defendants with authority to postpone a rule that has already gone into effect. There is no merit to Defendants' assertion that a "compliance date" is "within the meaning of the term 'effective date'" for purposes of Section 705. Second, Defendants' attempt to postpone certain compliance dates in the Rule after it became effective constitutes an improper end-run around the APA's notice-and-comment requirements for amending or repealing a rule. Third, Defendants have failed to satisfy the four-part preliminary injunction test required to postpone a rule pursuant to Section 705. Fourth, Defendants are not authorized to postpone a Rule under Section 705 in order to administratively reconsider it, rather than to preserve the status quo pending judicial review. Finally, Defendants arbitrarily failed to provide an adequate justification for the Postponement Notice or to consider all factors relevant to the agency's decision, such as the significant benefits that would be lost by indefinitely postponing several requirements of the Rule.

4. Accordingly, Plaintiffs seek a declaration that Defendants' issuance of the Postponement Notice violated the APA, and request that the Court vacate the Postponement Notice so that the Waste Prevention Rule is reinstated in its entirety.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiffs), and 5 U.S.C. §§ 701-706 (APA). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

6. Defendants' issuance of the Postponement Notice on June 15, 2017 postponing certain compliance dates of the Waste Prevention Rule constitutes final agency action and is therefore judicially reviewable within the meaning of the APA.  5 U.S.C. §§ 704, 706.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is the judicial district in which the State of California resides and this action seeks relief against federal agencies and officials acting in their official capacities.

**INTRADISTRICT ASSIGNMENT**

8. Pursuant to Civil Local Rules 3-5(b) and 3-2(c), there is no basis for assignment of this action to any particular location or division of this Court.

**PARTIES**

9. Plaintiff STATE OF CALIFORNIA brings this action by and through Attorney General Xavier Becerra. The Attorney General is the chief law officer of the State, Cal. Const., art. V, § 13, and is authorized to seek judicial remedies to protect the natural resources of the State of California from pollution, impairment, or destruction. Cal. Gov. Code §§ 12600-12612. This challenge is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to represent the public interest.

10. Plaintiff STATE OF NEW MEXICO brings this action by and through Attorney General Hector Balderas. The Attorney General of New Mexico is authorized to prosecute in any court or tribunal all actions and proceedings, civil or criminal, when, in his judgment, the interest of the state requires such action. N.M. Stat. Ann. § 8-5-2.

11. Plaintiffs have an interest in the responsible use, management, and conservation of our nation's public resources. That interest is particularly strong where, as here, the waste of such

resources causes adverse environmental impacts that Plaintiffs are working diligently to address. Plaintiffs also have a significant interest in preventing the waste of public resources which belong to the people.

12. In California, the Bureau administers 15.2 million acres of public lands, nearly 15 percent of the State's land area, as well as 47 million acres of subsurface mineral estate and 592,000 acres of Native American tribal land. These lands contain 530 producing oil and gas leases covering approximately 200,000 acres and 7,000 usable oil and gas wells. California is a leading state in terms of oil extraction on public lands, producing annually approximately 14 million barrels, along with approximately 7 billion cubic feet of natural gas. Considering onshore Bureau-administered leases nationwide, California is the third largest oil producer and the 13th highest natural gas producing state.

13. In New Mexico, the Bureau administers over 13 million acres of public lands, 36 million acres of federal mineral estate, and approximately 8 million acres of Indian trust minerals. New Mexico is the second highest producer among the states of gas on public lands, and the highest producer of crude oil. Annually, New Mexico produces approximately 1,220 billion cubic feet of natural gas, of which approximately 60 percent is from federal and Indian lands, and 85,200 million barrels of crude oil, of which approximately 45 percent is from federal and Indian lands. New Mexico has the third highest volume of flared oil-well gas among all states.

14. Plaintiffs have a clear monetary stake in Defendants' decision to postpone certain provisions of the Waste Prevention Rule. California and New Mexico are two of the highest-producing states in terms of oil and gas extraction on public lands. Since 2008, California has received an annual average of $82.5 million in royalties from federal mineral extraction within the State. Royalties from federal oil and gas development in California are deposited into the State School Fund, which supports public education. New Mexico has received an annual average of $470 million in federal mineral extraction royalties during this same time period. One study estimates that New Mexico lost between $39.16 million and $46.62 million in royalties from venting and flaring between 2010 and 2015. This figure does not include lost royalties from leaks. New Mexico, whose per-pupil education spending is below the national average, uses its

Complaint for Declaratory and Injunctive Relief

federal mineral leasing royalty payments for educational purposes. Thus, maximizing royalty recovery in California and New Mexico serves vital societal interests.

15. Plaintiffs have a strong interest in preventing adverse air quality impacts from the production of fossil fuels in their States. More than 95 percent of federal drilling in California occurs in Kern County, which houses four of the nation's top seven producing oil fields. Kern County is in extreme nonattainment with the federal eight-hour ozone standard and is also in nonattainment for federal fine particulate matter standards, as well as numerous state ambient air quality standards. Excess pollution in this part of California—including pollution from the oil and gas industry—significantly increases rates of asthma, heart disease, and lung disease, and raises cancer risk. In New Mexico, the San Juan Basin in the Four Corners region is one of the areas of the State most affected by pollution caused by venting and flaring from oil and gas operations. This region is the home of the nation's largest methane "cloud" as detected by instruments on orbiting satellites. A 2014 study by scientists at the Jet Propulsion Laboratory, Los Alamos National Laboratory, and the University of Michigan determined that emissions from fossil fuel extraction likely contributed to this methane hot spot to a greater degree than previously believed. A 2017 follow-up study using airborne monitoring found that, contrary to industry claims, natural seepage from geologic sources contributes only a small fraction of total emissions in the region and cannot explain basin-wide consistent emissions from 2003 to 2015.

16. Plaintiffs also have a strong interest in preventing and mitigating harms that climate change poses to human health and the environment, including increased heat-related deaths, damaged coastal areas, disrupted ecosystems, more severe weather events, and longer and more frequent droughts. *See Massachusetts v. EPA*, 549 U.S. 497, 521 (2007). Methane is an extremely potent greenhouse gas, with climate impacts roughly 86 times those of carbon dioxide if measured over a 20-year period, or 25 times if measured over a 100-year period. California is already experiencing the adverse effects of climate change, including a decline in the average annual snowpack that provides approximately 35 percent of the State's water supply, increased erosion of beaches and low-lying coastal properties from rising sea levels, and increased formation of ground-level ozone (or smog), which is linked to asthma, heart attacks, and

5

1  pulmonary problems, especially in children and the elderly.  California law establishes targets to
2  reduce the State's greenhouse gas emissions to 1990 levels by 2020 and to 40 percent below 1990
3  levels by 2030.  California has committed to reducing greenhouse gas emissions, including
4  through the development of methane-curbing regulations for oil and gas operations and pipelines.

5      17.  As a state in the arid southwest, New Mexico is also experiencing the adverse effects
6  of climate change and will suffer additional impacts in the future.  Average temperatures in New
7  Mexico have been increasing 50 percent faster than the global average over the past century.
8  According to the Third U.S. National Climate Assessment, streamflow totals in the Rio Grande
9  and other rivers in the Southwest were 5 to 37 percent lower between 2001 and 2010 than the
10  20th century average flows.  Projections of further reduction of late-winter and spring snowpack
11  and subsequent reductions in runoff and soil moisture pose increased risks to water supplies
12  needed to maintain cities, agriculture, and ecosystems.  Drought and increased temperatures due
13  to climate change have caused extensive tree death across the Southwest.  Winter warming due to
14  climate change has exacerbated bark beetle outbreaks by allowing more beetles, which normally
15  die in cold weather, to survive and reproduce.  According to a 2015 study by scientists at the Los
16  Alamos National Laboratory, greenhouse gas-driven warming may lead to the death of 72 percent
17  of the Southwest's evergreen forests by 2050, and nearly 100 percent mortality of these forests by
18  2100.

19      18.  By indefinitely postponing the compliance deadlines for several provisions of the
20  Waste Prevention Rule, including requirements that operators capture a certain percentage of the
21  gas they produce, measure volumes of flared gas, upgrade or replace pneumatic equipment,
22  capture or combust storage tank vapors, and implement leak detection and repair programs,
23  Defendants' action will adversely impact Plaintiffs by increasing emissions of hazardous air
24  pollutants and greenhouse gases, reducing royalty collections, and wasting fossil fuel resources
25  that belong to the public.  Consequently, Plaintiffs have suffered legal wrong as a result of
26  Defendants' action and have standing to bring this suit.

27      19.  Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency
28  within the United States Department of the Interior that is charged with managing the federal

1  onshore oil and gas program and bears responsibility, in whole or in part, for the acts complained
2  of in this Complaint.
3         20.    Defendant KATHARINE S. MACGREGOR is the Acting Assistant Secretary for
4  Land and Minerals Management, United States Department of the Interior, and is sued in her
5  official capacity. Ms. MacGregor signed the Postponement Notice at issue and bears
6  responsibility, in whole or in part, for the acts complained of in this Complaint.
7         21.    Defendant RYAN ZINKE is the Secretary of the Interior and is sued in his official
8  capacity. Mr. Zinke has responsibility for implementing and fulfilling the Department's duties,
9  including the development of fossil fuel resources on public lands, and bears responsibility, in
10 whole or in part, for the acts complained of in this Complaint.

## STATUTORY BACKGROUND

12        22.    The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, governs the procedural
13 requirements for agency decision-making, including the agency rule making process. Prior to
14 formulating, amending, or repealing a rule, agencies must engage in a notice-and-comment
15 process. 5 U.S.C. §§ 551(5), 553. Notice must include a summary of the public rule making
16 proceedings, reference to the legal authority under which the rule is proposed, and "either the
17 terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* §
18 553(b). The public may then submit comments which the agency must consider before
19 promulgating a final rule. *Id.* § 553(c). This process is designed to "give interested persons an
20 opportunity to participate in the rule making through submission of written data, views, or
21 arguments." *Id.*
22        23.    Section 705 of the APA states in relevant part: "When an agency finds that justice so
23 requires, it may postpone the effective date of action taken by it, pending judicial review."
24 5 U.S.C. § 705. Under Section 705, "the standard for a stay at the agency level is the same as
25 the standard for a stay at the judicial level: each is governed by the four-part preliminary
26 injunction test . . .." *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2010); *see Winter v.*
27 *NRDC*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he
28 is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

24. Under the APA, a "reviewing court shall . . . hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706.

## FACTUAL AND PROCEDURAL BACKGROUND

25. In recent years, the United States has experienced a boom in oil and gas production accelerated by technological advances such as hydraulic fracturing and directional drilling. However, the American public has not fully benefitted from this increase in domestic energy production because it "has been accompanied by significant and growing quantities of wasted natural gas." 81 Fed. Reg. at 83,014. For example, between 2009 and 2015, nearly 100,000 oil and gas wells on federal land released approximately 462 billion cubic feet of natural gas through venting and flaring, enough gas to serve about 6.2 million households for a year. *Id*. at 83,009. In 2014, operators vented and flared approximately 4.1 percent of the total production from Bureau-administered leases, or enough natural gas to supply 1.5 million households for a year. *Id*. at 83,010.

26. Several oversight reviews, including those by the Government Accountability Office ("GAO") and the Department of the Interior's Office of the Inspector General, have specifically called on the Bureau to update its "insufficient and outdated" regulations regarding waste and royalties. *Id*. at 83,009-10. GAO estimated that in 2008 alone, operators vented or flared 50 billion cubic feet of economically recoverable gas, representing about $23 million in lost royalties. The reviews recommended that the Bureau require operators to augment their waste prevention efforts, afford the agency greater flexibility in rate setting, and clarify policies regarding royalty-free, on-site use of oil and gas. *Id*. at 83,010.

27. In 2014, the Bureau initiated a process to solicit stakeholder and public input to inform the development of a proposed rule that would update its existing regulations on these issues. The Bureau released its proposal in February 2016, which included (1) limits on venting

8

and flaring; (2) identification and repair of equipment leaks; (3) replacement of high-bleed equipment with no- or low-bleed equipment; and (4) minimizing losses of gas from storage vessels, well maintenance, and production activities. 81 Fed. Reg. 6,616, 6,619-24 (Feb. 8, 2016) ("Proposed Rule"). The Proposed Rule also incentivized compliance by imposing royalties on any gas lost in situations where the loss is not unavoidable, including when gas is flared in excess of capture requirements. *Id*.

28. The Bureau received approximately 330,000 public comments, including approximately 1,000 unique comments, on the Proposed Rule. 81 Fed. Reg. at 83,021. The agency also hosted stakeholder meetings and met with regulators from states with significant federal oil and gas production. *Id*.

29. The Bureau issued the final Waste Prevention Rule in November 2016. 81 Fed. Reg. 83,008. In the final Rule, the Bureau refined many of the provisions of the Proposed Rule based on comments to ensure both that compliance was feasible for operators and that the Rule achieved its waste prevention objectives. The Rule regulates four main areas of oil and gas production: venting, flaring, leak detection, and royalties on waste. *Id*. at 83,010-13. In sum, the Rule reduces the waste of natural gas by prohibiting venting except under specified conditions, and requires updates to existing equipment. The Rule's flaring regulations reduce waste by requiring gas capture percentages that increase over time, provides exemptions that are scaled down over time, and requires operators to submit Waste Minimization Plans. Leak detection provisions require semi-annual inspections for well-sites and quarterly inspections for compressor stations. Finally, the Rule modifies the definition of "unavoidable losses" and states that all other losses of gas are deemed "avoidable" and thus subject to royalties.

30. The Rule is designed to force considerable reductions in waste from flaring (49 percent) and venting and leaked gas (35 percent), saving and putting to use up to 41 billion cubic feet of gas per year. *Id*. at 83,014. The Bureau estimated that the Rule will produce additional royalties of up to $14 million per year, and could also avoid an estimated 175,000-180,000 tons of methane emissions per year. *Id*. In addition, the Rule will reduce emissions of volatile organic

9

Complaint for Declaratory and Injunctive Relief

1  compounds, including benzene and other hazardous air pollutants, by 250,000–267,000 tons per
2  year. *Id.*

3      31.    The Rule was immediately challenged by two industry groups and the States of
4  Wyoming and Montana (later joined by North Dakota and Texas) (collectively, "Petitioners") in
5  federal district court in Wyoming, on the alleged basis that the Bureau did not have statutory
6  authority to regulate air pollution and that the Rule was arbitrary and capricious. *Western Energy*
7  *Alliance v. Jewell*, No. 2:16-cv-00280-SWS (D. Wyo. petition filed Nov. 16, 2016); *State of*
8  *Wyoming v. Jewell*, No. 2:16-cv-00285-SWS (D. Wyo. petition filed Nov. 18, 2016) (collectively,
9  the "Wyoming Litigation"). The California Attorney General's Office, on behalf of the Air
10 Resources Board, and the State of New Mexico, intervened in December 2016 on the side of the
11 Bureau to defend the Rule. Several environmental organizations also intervened on the side of
12 the Bureau to defend the Rule.

13     32.  On January 16, 2017, following briefing and oral argument on the Petitioners' motions
14 for a preliminary injunction, the Wyoming district court denied the motions, finding that the
15 Petitioners had failed to establish a likelihood of success on the merits or irreparable harm in the
16 absence of an injunction.

17     33.    The Rule became effective on January 17, 2017. 81 Fed. Reg. at 83,008.

18     34.    On June 15, 2017, the Bureau published its Postponement Notice in the Federal
19 Register. 82 Fed. Reg. 27,430 (June 15, 2017) (Waste Prevention, Production Subject to
20 Royalties, and Resource Conservation; Postponement of Certain Compliance Dates). Citing "the
21 existence and potential consequences of the pending litigation," the Bureau stated that it "has
22 concluded that justice requires it to postpone the compliance dates for certain sections of the Rule
23 pursuant to the Administrative Procedure Act, pending judicial review." *Id*. In particular, the
24 Bureau indefinitely postponed the January 17, 2018 compliance date regarding "new
25 requirements that operators capture a certain percentage of the gas they produce (43 CFR 3179.7),
26 measure flared volumes (43 CFR 3179.9), upgrade or replace pneumatic equipment (43 CFR
27 3179.201–179.202), capture or combust storage tank vapors (43 CFR 3179.203), and implement
28 leak detection and repair (LDAR) programs (43 CFR 3179.301–.305)." *Id*.

Complaint for Declaratory and Injunctive Relief

35. While acknowledging that Section 705 of the APA only provides an agency with authority to "postpone the effective date of action taken by it, pending judicial review," the Bureau claimed that the January 17, 2018 "compliance date" is "within the meaning of the term 'effective date' as that term is used in Section 705 of the APA." 82 Fed. Reg. at 27,431. The Bureau further stated that while it "believes the Waste Prevention Rule was properly promulgated, the petitioners [in the Wyoming Litigation] have raised serious questions concerning the validity of certain provisions of the Rule." *Id*. The Bureau also referenced an "administrative review of the Rule," and stated that "[p]ostponing these compliance dates will help preserve the regulatory status quo while the litigation is pending and the Department reviews and reconsiders the Rule." *Id*.

36. The Bureau's action was swiftly rebuked by members of Congress. On June 19, 2017, Senator Maria Cantwell of Washington (ranking member of the Senate Energy and Natural Resources Committee) and Senator Tom Udall of New Mexico (ranking member of the Senate Appropriations Subcommittee on Interior, Environment and Related Agencies) sent a letter to Secretary Zinke condemning the Postponement Notice as a direct violation of the APA and urging the Secretary to return the Rule to full effect.

37. On June 20, 2017, the Bureau filed a motion in the Wyoming Litigation requesting that the Court extend the briefing schedule for a period of 90 days, citing the Postponement Notice as a justification for the extension. The Wyoming district court granted the extension on June 27, 2017.

**FIRST CAUSE OF ACTION**

**(Violation of the APA, 5 U.S.C. §§ 705, 706)**

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. Section 705 of the APA provides, in relevant part, that: "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." 5 U.S.C. § 705.

40. The effective date of the Waste Prevention Rule was January 17, 2017.

11

41. By applying Section 705 of the APA to a rule that was already in effect, Defendants contradicted the plain meaning of "postpon[ing] the effective date" of a rule. 5 U.S.C. § 705.

42. Moreover, by applying Section 705 of the APA to "certain compliance dates" of a rule that was already in effect, Defendants contradicted the plain meaning of "postpon[ing] the effective date" of a rule. 5 U.S.C. § 705.

43. Therefore, Defendants' issuance of the Postponement Notice was contrary to the requirements of the APA, not in accordance with law, and in excess of Defendants' statutory authority. 5 U.S.C. §§ 705, 706. Consequently, the Postponement Notice should be held unlawful and set aside.

## SECOND CAUSE OF ACTION
### (Violation of the APA, 5 U.S.C. §§ 553, 706)

44. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45. The APA requires that prior to formulating, amending, or repealing a rule, agencies must engage in a notice-and-comment process, and provide "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. §§ 551(5), 553.

46. By indefinitely postponing certain requirements of the Waste Prevention Rule, the Postponement Notice acts as an amendment of the Rule and thus is a substantive final agency action with binding legal effect.

47. Here, Defendants issued the Postponement Notice without providing any prior notice, and failed to provide any opportunity to comment, as required by the APA. 5 U.S.C. § 553.

48. Therefore, Defendants' issuance of the Postponement Notice was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory authority, and without observance of procedure required by law. 5 U.S.C. §§ 553, 706. Consequently, the Postponement Notice should be held unlawful and set aside.

///

///

///

Complaint for Declaratory and Injunctive Relief

## THIRD CAUSE OF ACTION

**(Violation of the APA, 5 U.S.C. §§ 705, 706)**

49. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50. Under 5 U.S.C. § 705, an agency may only "postpone the effective date of action taken by it" if it "finds that justice so requires." 5 U.S.C. § 705. Under Section 705, "the standard for a stay at the agency level is the same as the standard for a stay at the judicial level; each is governed by the four-part preliminary injunction test." *Jackson,* 833 F. Supp. 2d at 30. Thus, an agency must base a stay under Section 705 on specific findings that legal challenges to the Rule are likely to succeed on the merits, that there will be irreparable harm absent a stay, that the balance of equities favors a stay, and that a stay is in the public interest. *See Winter*, 555 U.S. at 20.

51. In issuing the Postponement Notice, Defendants failed to even mention the four-part preliminary injunction test, let alone make findings under each of the four factors. To the contrary, Defendants stated that the Waste Prevention Rule was "properly promulgated."

52. Therefore, Defendants' issuance of the Postponement Notice was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory authority, and without observance of procedure required by law. 5 U.S.C. §§ 705, 706. Consequently, the Postponement Notice should be held unlawful and set aside.

## FOURTH CAUSE OF ACTION

**(Violation of the APA, 5 U.S.C. §§ 705, 706)**

53. Paragraphs 1 through 52 are realleged and incorporated herein by reference.

54. Section 705 of the APA permits an agency to postpone the effective date of a rule "pending judicial review." 5 U.S.C. § 705.

55. In its Postponement Notice, Defendants stated that postponing certain compliance dates "will help preserve the regulatory status quo while the litigation is pending and the Department reviews and reconsiders the Rule." However, rather than moving toward a resolution of the pending litigation, Defendants cited the Postponement Notice as a justification for extending deadlines in the Wyoming Litigation, thereby delaying judicial review of the Rule. Moreover,

1    Section 705 by its plain language does not permit an agency to stay a rule for purposes of its own

2    reconsideration of that rule.  *See Jackson*, 833 F. Supp. 2d at 33-34.

3        56.    Therefore, Defendants' issuance of the Postponement Notice was arbitrary, capricious,

4    an abuse of discretion, or otherwise not in accordance with law, in excess of statutory authority,

5    and without observance of procedure required by law.  5 U.S.C. §§ 705, 706.  Consequently, the

6    Postponement Notice should be held unlawful and set aside.

## FIFTH CAUSE OF ACTION

### (Violation of the APA, 5 U.S.C. § 706)

9        57.    Paragraphs 1 through 56 are realleged and incorporated herein by reference.

10       58.    When reviewing agency action to determine whether it is arbitrary and capricious, a

11   court must consider whether "the agency considered the relevant factors and articulated a rational

12   connection between the facts found and the choices made."  *Alaska Oil and Gas Ass'n v. Pritzker*,

13   840 F.3d 671, 675 (9th Cir. 2016).

14       59.    Here, the grounds offered by Defendants do not justify the postponement of certain

15   requirements of the Waste Prevention Rule, for several reasons.  First, the Postponement Notice

16   does not "preserve the regulatory status quo," given that the entire Rule was in effect prior to the

17   issuance of the Postponement Notice.  Second, Defendants failed to consider the impacts of the

18   Postponement Notice on any person or entity apart from the Petitioners in the Wyoming

19   Litigation and oil and gas operators.  Thus, the agency failed to address important factors such as

20   the impact of the Postponement Notice on the environment, public health and safety, or royalty

21   revenues which benefit the Plaintiffs and the American people.  Finally, in issuing the

22   Postponement Notice, Defendants failed to provide a reasoned explanation as to why only certain

23   requirements of the Waste Prevention Rule should be postponed, or why the agency was so

24   drastically changing course from its recently-promulgated Rule.

25       60.    Therefore, Defendants' issuance of the Postponement Notice was arbitrary, capricious,

26   an abuse of discretion, or otherwise not in accordance with law, in excess of statutory authority,

27   and without observance of procedure required by law.  5 U.S.C. § 706.  Consequently, the

28   Postponement Notice should be held unlawful and set aside.

Complaint for Declaratory and Injunctive Relief

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a declaratory judgment that Defendants acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the procedure required by law in their issuance of the Postponement Notice, in violation of the APA;

2. Issue an order vacating Defendants' unlawful issuance of the Postponement Notice so that the Rule is automatically reinstated in its entirety;

3. Award Plaintiffs their costs, expenses, and reasonable attorneys' fees; and

4. Provide such other relief as the Court deems just and proper.

Dated:  July 5, 2017                                     Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
SUSAN S. FIERING
Supervising Deputy Attorney General

/s/ George Torgun
GEORGE TORGUN
MARY THARIN
Deputy Attorneys General

*Attorneys for the State of California*

HECTOR BALDERAS
Attorney General of New Mexico

/s/ Bill Grantham
BILL GRANTHAM (*pro hac vice pending*)
Assistant Attorney General

*Attorneys for the State of New Mexico*

Complaint for Declaratory and Injunctive Relief